1

2

3

4

5

6

7

8                   IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DANIEL J. MASTERSON,

11              Plaintiff,                    No. CIV S-05-0192 RRB DAD P

12        vs.

13   ROSEANNE CAMPBELL, et al.,        ORDER AND

14              Defendant.             FINDINGS AND RECOMMENDATIONS

15   _____/

16              Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action

17   filed pursuant to 42 U.S.C. § 1983.  On November 2, 2006, defendants Allen, Baker, Barham,

18   Clendenin, Hansen, Hill, Johnson, Kaphan, Kile-Martinez, Medina, Mussen, Purviance, Rendon,

19   Reyes, Robinson, Sosa, White, and Williams filed a motion to dismiss the complaint on the

20   grounds that plaintiff failed to exhaust available administrative remedies prior to bringing this

21   action.  In addition, defendants contend that plaintiff's complaint fails to state a claim upon

22   which relief can be granted.  Plaintiff has filed a timely opposition to the motion.

23                              **PLAINTIFF'S CLAIMS**

24              In his 251-page complaint, plaintiff alleges that defendants have violated his

25   rights under the First, Eighth, and Fourteenth Amendments.  In short, plaintiff claims that over

26   the course of several years, defendant Baker has sexually harassed him and other inmates.

1

1   Plaintiff further claims that defendants have retaliated against him for filing complaints

2   concerning defendant Baker's alleged misconduct.  Specifically, plaintiff alleges that defendants

3   removed him from his clerical position and have refused to put him on a waiting list for a new

4   clerical position.  In addition, plaintiff alleges that defendants improperly confiscated his log

5   book, which contained his notes regarding defendant Baker's alleged misconduct.  Plaintiff has

6   filed numerous grievances and staff complaints addressing these issues.  He has also sent

7   correspondence directly to the California Department of Corrections and Rehabilitation and state

8   and federal elected officials.  Dissatisfied with the responses he has received, plaintiff filed this

9   § 1983 action on January 28, 2005.  The court ordered service of plaintiff's complaint on

10  eighteen defendants, all of whom are parties to the motion to dismiss.

11          In his complaint, plaintiff provides a detailed chronology of the events in support

12  of his constitutional claims.  By way of background, plaintiff alleges that he has worked in prison

13  clerical positions for years.  He has worked as a payroll clerk, administrative clerk, and

14  supervising cook II clerk.  (Compl. at 5.)  On May 31, 2003, plaintiff was assigned to work as a

15  third watch clerk.  On September 11, 2003, plaintiff requested and received a housing unit

16  change because of defendant Baker's alleged ongoing harassment.  On October 30, 2003,

17  plaintiff spoke with Lieutenant Lincoln about defendant Baker's conduct and explained that

18  Baker was planning to have other officers search plaintiff's cell as a form of harassment.

19          On November 4, 2003, plaintiff alleges that defendant Baker ordered defendant

20  Purviance to search his cell.  (Compl. at 5.)  Defendant Purviance allegedly removed several of

21  plaintiff's possessions during the search but failed to list them as confiscated items.  (Compl. at

22  5-6.)  In particular, plaintiff alleges that defendant Purviance took a personal photo and

23  confidential documents containing dates and times of defendant Baker's harassment.  (Compl. at

24  6.)  Plaintiff alleges that defendant Baker eventually took possession of the items and refused to

25  return them to plaintiff.  (Id.)  On November 9, 2003, plaintiff alleges he wrote a letter to

26  Lieutenant Lincoln describing the actions of defendants Baker and Purviance.

2

1            Plaintiff alleges that, on December 29, 2003[1], defendant Baker instigated a

2 situation where a fellow inmate attempted to assault plaintiff.  On the same day, plaintiff filed

3 Appeal 04-00010 about the incident.  (Compl. at Ex. 5.)  Plaintiff alleges that he hand delivered

4 his complaint to Lieutenant Lincoln.  Lieutenant Lincoln allegedly assured plaintiff that she

5 would hand deliver the complaint to Acting Warden Scott Kernan.  Plaintiff requested a job

6 change to avoid further interaction with defendant Baker. (Compl. at 6.)

7            On January 7, 2004, plaintiff began working as a clerk for Rabbi Ira Book, the

8 Jewish Chaplain.  (Id. at 6.)  On January 15, 2004, two investigation service unit officers,

9 defendants Sosa and Clendenin, interviewed plaintiff concerning a personal letter he wrote to a

10 friend.  The letter described how defendant Baker had provided inmates with lighters for favors

11 or information.  The officers allegedly threatened plaintiff with cell searches and disciplinary

12 action if plaintiff continued to spread such information.  (Id. at 7.)

13            On January 27, 2004, plaintiff wrote a letter to Associate Warden Burruel,

14 describing the incident with defendants Sosa and Clendenin.  In addition, plaintiff expressed

15 disagreement with Burruel's decision to assign a sergeant to review plaintiff's complaint against

16 defendant Baker.  (Compl. at 7.)

17            On January 28, 2004, defendant Medina interviewed plaintiff regarding his

18 complaint and plaintiff requested that a higher-ranking official review and investigate the matter.

19 Sergeant Medina allegedly responded, "I am a close friend with this officer and his family, and I

20 know he would not act in that manner," while admitting he had heard defendant Baker make

21 inappropriate comments to inmates in the dining room.  (Compl. at 7.)  Sergeant Medina strongly

22 suggested to plaintiff not to pursue his complaint against Baker.  Plaintiff  alleges that he

23 /////

24

25         [1]Although plaintiff alleges in his complaint that this incident occurred on November 29,
2003, it appears from the grievance and the remainder of plaintiff's complaint that December 29,

26 2003 is the correct date.

1  received so many threats from officers of all ranks that he withdrew Appeal 04-00010 and stated

2  he would seek relief from another source.  (Id.)

3               On February 11, 2004, plaintiff received Sergeant Medina's written report,

4  reflecting plaintiff's withdrawal of Appeal 04-00010.  It was co-signed by R. Robinson and

5  Associate Warden Burruel.  (Compl. at 7-9 & Ex 9.)

6               On January 20, 2004, Acting Warden Kernan wrote a letter to plaintiff that

7  plaintiff thought was in response to his allegations regarding defendant Baker's sexual

8  misconduct.  However, plaintiff alleges that Kernan's letter did not address his allegations.

9  Instead, Kernan noted the verbal warning that defendants Sosa and Clendenin gave plaintiff

10  about using state materials and equipment to write a letter to a friend.  (Compl. at 8 & Ex. 10.)

11              On February 2, 2004, R. Robinson interviewed plaintiff and strongly suggested to

12  him not to pursue a staff complaint.  On February 3, 2004, Captain Robinson again called

13  plaintiff into his office and, according to plaintiff, told him that if he continued with his

14  complaint, Robinson would see to it that plaintiff lost his job and his program.  (Id. at 8.)

15              On February 12, 2004, plaintiff wrote a request to defendant T. Hansen, an

16  Appeals Coordinator, for a stay of the time limits to submit Appeal 04-00010 to the second level

17  of review, noting that courts would not accept a CDC 602 as exhausted unless all levels have

18  been exhausted.  (Compl. at Ex. 11.)

19              On or around February 12, 2004, while plaintiff was working in the chapel,

20  Lieutenant Lincoln informed him that it was a fire hazard and medically unsafe for an inmate to

21  be locked in a chapel.  (Compl. at 8.)  On or about February 16, 2004, plaintiff informed

22  defendant Allen that Lieutenant Lincoln did not want the chapel door locked.  (Id. at 8-9.)  Allen

23  responded that Lieutenant Lincoln did not run anything on his watch.  According to plaintiff,

24  Allen continued to lock inmates in the chapel unsupervised.  (Id. at 9.)  On February 16, 2004,

25  plaintiff drafted a letter on Rabbi Book's letterhead, requesting that the chapel door remain

26  unlocked when no staff was present.  Plaintiff included "APPROVED/DISAPPROVED" and a

1   signature line for Lieutenant Lincoln.  (Id. at Ex. 12.)  Plaintiff alleges that he also put a post-it

2   on the letter indicating that it was a "DRAFT."  Plaintiff addressed it to Lieutenant Lincoln and

3   wrote "confidential" on the envelope.  On February 18, 2004, defendant Allen unlocked the

4   chapel door and asked who typed the memorandum.  When plaintiff told Allen that he did, Allen

5   fired him.  (Compl. at 9.)

6           On February 19, 2004, plaintiff wrote a letter to the Director of CDCR, explaining

7   Allen's actions and requesting an investigation.  On February 23, 2004, plaintiff spoke with

8   Rabbi Book.  The Rabbi told plaintiff that Captain Robinson ordered Pastor Scott Barham to

9   issue plaintiff a serious rules violation report.  He also told plaintiff that Lieutenant Lincoln and

10  Captain Robinson did not see eye to eye on matters.  (Id. at 9.)  On March 1, 2004, plaintiff again

11  spoke with Rabbi Book who told plaintiff that he had spoken with Associate Warden Burruel and

12  informed him that he wanted plaintiff to continue as his clerk.  (Id.)  However, Associate Warden

13  Burruel denied his request.  (Id. at 9-10.)

14          On March 22, 2004, plaintiff wrote a second letter to the director of corrections

15  requesting intervention and explaining that correctional officer J.L. Baker was in violation of

16  California Regulation 3401.5, prohibiting employee sexual misconduct.  Plaintiff also suggested

17  that prison officials were retaliating against him and described, for example, how his supervisor

18  issued him an exceptional work report, but a correctional officer issued him a below average

19  report for the same time period.  (Id. at 10 & Ex. 15.)

20          On March 24, 2004, K. Johnson and L. Martinez held a classification committee

21  hearing regarding plaintiff's job status.  Plaintiff had been charged with "Manipulation of Staff"

22  for writing the memo on Rabbi Book's personal letterhead.  (Id. at 10 & Ex. 17.)  K. Johnson and

23  L. Martinez informed plaintiff that they were reducing his job status from A1A to A2B and

24  removing him from his job assignment as Rabbi Book's clerk.  Plaintiff told the committee that

25  Rabbi Book had requested that he continue as his clerk.  Plaintiff also informed the committee

26  that he had not received a copy of the disciplinary report upon which they were relying.

1  L. Martinez held up the CDC-115 and said that the committee was "saving time" by taking his

2  job and privileges now because plaintiff would be found guilty. (Id. at 10.)[2]

3         On March 30, 2004, Appeals Coordinator Hansen sent a response to plaintiff's

4  request to stay time limitations for filing his complaint against defendant Baker.  Hansen stated

5  that plaintiff had withdrawn his appeal at the first level of review and therefore had waived his

6  right to appeal the issue further.  (Compl. at 10.)

7         On April 1, 2004, plaintiff sent his 602 concerning defendant Baker's misconduct

8  to the Inmate Appeals Branch, explaining that the second level of appeals refused to review the

9  complaint.  Plaintiff asked "[a]re there options?"  (Id. at Ex. 20.)  On April 25, 2004, plaintiff

10  received a response informing him that there was no record of a complaint filed and that if he

11  filed a complaint, the staff member would be notified.  (Id. at 12.)

12         On April 4, 2004, plaintiff filed a 602 regarding the classification committee's

13  actions.  On April 13, 2004, Appeals Coordinator Hansen interviewed plaintiff and said he was

14  not in agreement with the actions of the committee and would order the CDC-115 rules violation

15  report issued and heard.  On April 18, 2004, plaintiff received the CDC-115 rules violation

16  report.  (Id. at 11.)

17         On April 22, 2004, defendant Rendon held a disciplinary hearing on plaintiff's

18  "Manipulation of Staff" rules violation.  Plaintiff had previously requested Rabbi Book as a

19  witness.  At the hearing, Lieutenant Rendon ordered plaintiff to leave the room while Lieutenant

20  Rendon spoke with the Rabbi for approximately five minutes.  Plaintiff was then called back into

21  the room.  Rabbi Book testified that he did not feel that the CDC-115 should have been issued

22  and that he had asked Associate Warden Burruel if plaintiff could continue as his clerk.  (Id. at

23  11.)  Lieutenant Lincoln subsequently testified that she did not think plaintiff had malicious

24  intent in writing the memo.  Lieutenant Rendon nonetheless found plaintiff guilty of the

25  ─────────────────

26  [2] Plaintiff also alleges that he called the Department of Corrections sexual misconduct
hot line and left his name and CDC number.  (Compl. at 10.)

1  violation.  Plaintiff alleges in his complaint that he obtained the notes Lieutenant Rendon took

2  during the hearing and argues that they failed to reflect all of the questions and responses at the

3  hearing.

4       On April 26, 2004, plaintiff responded to Kernan's January 20, 2004 letter and

5  told him that he had previously filed a complaint, and that Lieutenant Lincoln was supposed to

6  hand deliver it to him on December 29, 2003.  Plaintiff also told Kernan that he felt he was being

7  retaliated against for filing the complaint and again requested an investigation.  (Compl. at 12.)

8       On May 16, 2004, plaintiff submitted his 602 about the classification committee's

9  actions for director's level review.  Plaintiff also filed a 602, challenging Lieutenant Rendon's

10  guilty finding on the rule violation.  (Id.)

11       On June 8, 2004, plaintiff spoke with Lieutenant Lincoln and told her that

12  defendant Baker patted an inmate on the behind during yard recall and made a sexually explicit

13  comment.  (Id. at 11-12.)  On the same day, plaintiff received a letter from the Inmate Appeals

14  Branch informing him that he must have prison officials respond to his complaint about

15  defendant Baker at the second level of review.  (Id. at 12-13 & Ex. 25.)  On June 18, 2004,

16  plaintiff sent documents, exhibits, statements, and letters to the Inmate Appeals Branch

17  supporting his allegations and requesting an investigation.  Plaintiff sent similar documents to the

18  CDCR Office of Internal Affairs and the CDCR Senior Ombudsman.  (Id. at 13.)

19       On August 8, 2004, floor officer Hill allegedly refused to sign for plaintiff's legal

20  mail.  Hill stated "[y]es, I am denying you access to the courts."  (Id. at Ex. 28.)

21       On August 30, 2004, plaintiff alleges that defendant Baker faced his cell and

22  began stroking his baton in an inappropriate manner.  On September 2, 2004, plaintiff spoke with

23  Lieutenant Mussen about defendant Baker and requested advice.  Mussen told plaintiff that it was

24  better not to rock the boat.  Plaintiff asked why defendant Baker continues to get away with his

25  behavior, and Lieutenant Mussen replied that he has a strong union.  (Id. at 14.)

26  /////

1    On September 6, 2004, plaintiff asked to see the prison litigation coordinator.

2  Plaintiff alleges that at this time defendant Hill refused to process his legal mail because it

3  concerned a fellow officer.  (Id. at 14.)

4    On September 8, 2004, K. Johnson and L. Martinez convened a classification

5  committee hearing on plaintiff's request to be placed on a clerical job waiting list.  The

6  committee denied plaintiff's request.  Plaintiff claims that the committee's action was a further

7  act of retaliation against him for filing complaints.  Plaintiff alleges that he produced four cases

8  in which other inmates had more extensive disciplinary records related to work who were

9  subsequently granted clerk positions in the previous year.  (Compl. at 14.)

10    On September 15, 2004, plaintiff filed a 602 concerning the committee's refusal

11  to put him on the clerical job waiting list.  On September 26, 2004, plaintiff again wrote to the

12  CDCR Director, requesting an investigation.  On October 4, 2004, Appeals Coordinator E.A.

13  Reyes interviewed plaintiff.  Again, plaintiff requested an investigation.  (Id. at 15.)

14    On November 3, 2004, plaintiff spoke with correctional officer Martin as S.

15  Wilkinson stood nearby.  Plaintiff informed Martin that, due to the misconduct of staff, he was

16  keeping a log book in which he recorded all incidents, including dates and times of defendant

17  Baker's sexual misconduct.  (Id. at 15.)  On November 29, 2004, plaintiff and his cellmate were

18  ordered to pack all of their property and move to another building.  While packing, defendant

19  Kaphan came to the cell and said Sergeant J.P. White had ordered him to search the cell and

20  confiscate plaintiff's log book at any cost.  Plaintiff surrendered the log book to Kaphan.

21  Plaintiff informed defendant Kaphan that the contents of the log book were confidential.

22  Defendant Kaphan issued a cell search receipt and left the building.  Plaintiff asked who ordered

23  the bed move, and correctional officer Martin stated that Sergeant J.P. White had ordered the

24  move and Lieutenant Lincoln had signed the paper work.  (Id. at 16.)

25    On November 30, 2004, plaintiff filed a 602, demanding return of his seized log

26  book and legal paper work contained in it.  On December 2, 2004, plaintiff reported to L.

1  Martinez's office and explained that Sergeant J.P. White had his legal work and evidence.

2  Plaintiff alleges that Martinez smiled and stated "[i]t's not my problem" and destroyed the

3  application.  (Id. at 17.)

4  On December 4, 2004, defendant Baker was standing outside the gym doors

5  unzipping and zipping his jumpsuit, stating "If you come hit this one time, I'll give you the

6  keys."  (Compl. at 17.)

7  On December 5, 2004, correctional officer Linde issued a disciplinary report

8  against plaintiff for "possession of a state log book."  (Id.)

9  On December 10, 2004, Appeals Coordinator E.A. Reyes returned to plaintiff an

10  appeal he had filed on October 19, 2004, challenging the prison administration's failure to

11  investigate staff misconduct.  The appeal had already been screened out twice.  (Id. at 17 & Ex.

12  36.)  This time, plaintiff alleges, the appeals office simply returned it unanswered.  (Id. at 17.)

13  On December 17, 2004, defendant Williams summoned petitioner to a

14  disciplinary hearing for possession of the log book.  Petitioner pled not guilty.  Defendant

15  Williams then postponed the hearing due to the unavailability of witnesses.  (Id. at 18.)

16  On December 22, 2004, Dr. Keller interviewed plaintiff.  He told Dr. Keller about

17  defendant Baker's sexual misconduct and that the other defendants' retaliation against him had

18  continued since plaintiff first reported the incidents involving Baker.

19  On December 29, 2004, Lieutenant Williams resumed the disciplinary hearing and

20  denied plaintiff's requests for a copy of the log book.  Plaintiff asked defendant Williams if she

21  had seen the log book.  William's allegedly responded "I've seen and heard enough to know the

22  book was a state book." (Id. at 19.)  Defendant Williams also allegedly admonished plaintiff for

23  attempting to bring allegations of sexual misconduct to her attention.  Defendant Williams then

24  again postponed the hearing.  (Id.)

25  On January 4, 2005, defendant Williams reconvened the hearing.  Plaintiff's

26  fellow inmate, Houseman, was summoned to appear and testified that the seized log book was

not state-issued property.  Lieutenant Williams then stated that plaintiff needed to sign a waiver of the applicable time limits and waive the reporting employee's need to testify.  Plaintiff refused, and Lieutenant Williams said "then I find you guilty, and you can appeal it."  (Compl. at 19.)  Lieutenant Williams sentenced plaintiff to thirty days no yard, no phone, and loss of good time.  Plaintiff requested a copy of the confiscated legal work, and Lieutenant Williams denied the request, stating  "[y]es, I am denying you access to the court" and telling plaintiff that he could appeal the decision or write to a judge.  (Id.)

On January 11, 2005, Lieutenant Kudalta conducted an interview with plaintiff concerning the 602 challenging the confiscation of his legal work.  (Id.)  Plaintiff again requested a copy of the legal work.  Lieutenant Kudalta refused and questioned plaintiff as to why fellow inmate Houseman filed a 602.  Plaintiff said that he had legal work in the book too.  Lt. Kudalta responded "then we'll have to book him too, and issue him a write up."  (Id. at 20.)  On the same day, plaintiff filed a 602, claiming that Lieutenant Williams violated his due process rights at the disciplinary hearing.

On January 12, 2005, psychiatrist Dr. Young interviewed plaintiff.  Plaintiff disclosed symptoms of stress, anxiety attacks, restless sleep, and painful sores, which the doctor said were consistent with nerves and stress.  The psychiatrist then provided plaintiff with a prescription to help alleviate symptoms.  Dr. Young also said he would document the information.  (Id.)

Based upon these allegations, plaintiff concludes that defendants have violated his right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment, his right to freedom of speech under the First Amendment, and his right to due process pursuant to the Fourteenth Amendment.  (Id. at 20-21.)  Plaintiff seeks declaratory relief, injunctive relief, and monetary relief.  (Id. at 22.)

/////

/////

1

## DEFENDANTS' MOTION TO DISMISS

2

### I. Defendants' Motion

3    Defendants argue that the court should grant their motion to dismiss because

4    plaintiff has failed to exhaust administrative remedies with respect to his claims against

5    defendants Allen, Purviance, Hansen, Williams, Baker, Medina, Clendenin, Barham, Sosa, Hill,

6    Reyes, and Mussen.  (Defs.' Mot. to Dismiss at 3.)  Defendants also argue that plaintiff has failed

7    to state cognizable claims under the Eighth, Fourteenth, and First Amendments.  (Id.)  In support

8    of the motion, defendants have submitted declarations by Earl Kanipe, the Litigation Coordinator

9    at Mule Creek State Prison, and N. Grannis, Chief of Inmate Appeals at the California

10   Department of Corrections and Rehabilitation.  Defendants' counsel has also submitted a

11   declaration.

12

### A. Exhaustion of Administrative Remedies

13   At the outset, defendants concede that plaintiff has exhausted the claims presented

14   in the following four inmate appeals:  Appeals 04-00698, 04-01113, 04-01856 and 04-02470.

15   (Id. at 3 & 7-8.)  Defendants contend that the exhausted claims relate solely to plaintiff's alleged

16   loss of his clerical job and confiscation of his log book.  (Id. at 3.)  Defendants further contend

17   that in those four administrative appeals plaintiff  implicated only six defendants, namely

18   Johnson, Kile-Martinez, Rendon, Robinson, White, and Kaphan.  (Id. at 3 & 10.)  Defendants

19   argue that the exhausted claims have not been exhausted as to any of the remaining defendants.

20   (Id. at 3 & 10.)

21

### 1. Appeal 04-00698

22   Plaintiff submitted appeal 04-00698 on April 24, 2004.  (Id., Ex. B.)  The appeal

23   related to the Unit Classification Committee's (UCC) decision to reduce his work group status

24   from A1A to A2B during an annual classification status review.  (Defs.' Mot. to Dismiss at 8.)

25   Defendants Johnson and Kile-Martinez were both committee members.  The UCC noted a

26   pending rules violation report for manipulation of staff and a request by Pastor Barham (a named

1  defendant) that plaintiff be removed from his clerical assignment for manipulating staff.  (Id.)

2  The UCC determined that the reduction in status was warranted.  Plaintiff appealed this decision,

3  claiming that the action was illegal because he had not been found guilty of the rules violation at

4  the time of his annual review.  Plaintiff also claimed that the status reduction was in retaliation

5  for his reporting alleged incidents of sexual misconduct.  (Id.)  Defendants concede that plaintiff

6  exhausted the claims associated with this appeal.

### 2. Appeal 04-01113

8  Plaintiff submitted Appeal 04-01113 on May 14, 2004.  (Defs.' Mot. to Dismiss at

9  9.)  Therein, plaintiff alleged that defendant Rendon spoke privately with Rabbi Book during the

10  course of a rules violation hearing.  Plaintiff claims that this private meeting violated his right to

11  due process.  In addition, plaintiff alleges that defendant Rendon did not give fair consideration

12  to the evidence.

13  Defendants note that plaintiff had been charged with a rules violation for

14  preparing a change in operating policy on the personal letterhead of the Jewish Chaplain Rabbi

15  Book.  (Id. at 8.)  Plaintiff had submitted the proposed change to Lieutenant Lincoln for

16  signature.  (Id. at 9.)  Defendant Rendon found plaintiff guilty but reduced the charge to an

17  administrative rules violation.  (Id.)  Defendant Robinson reviewed the finding.  Defendants

18  concede that plaintiff exhausted the claims presented in Appeal 04-01113.

### 3. Appeal 04-01856

20  Plaintiff submitted Appeal 04-01856 on September 15, 2004, requesting further

21  review of his status by the UCC.  Defendants Johnson and Kile-Martinez were both committee

22  members.  At the hearing, plaintiff requested placement on the clerical job waiting list.  The

23  committee noted the adverse removal of plaintiff from his prior position as well as his rule

24  violation for manipulation of staff.  Based on these factors, the UCC found that placement on the

25  clerical job waiting list was not appropriate, but granted plaintiff's request for placement on a

26  textile job waiting list.  Plaintiff alleged retaliation and violation of due process because

1    defendant Kile-Martinez refused to place him on the clerical waiting list.  (Id. at 9.)  Defendants

2    concede that plaintiff exhausted the claims presented in this administrative appeal.

3                                    **4.  Appeal 04-02470**

4            Plaintiff submitted Appeal 04-02470 on November 30, 2004.  (Id.)   On

5    November 3, 2004, plaintiff showed Officer Wilkinson a log book similar to that utilized by

6    control booth officers in housing units.  (Id. at 10.)  On November 29, 2004, defendant Kaphan

7    searched plaintiff's cell and confiscated a log book containing plaintiff's confidential and legal

8    work.  (Defs.' Mot. to Dismiss at 5 & 10.)  Defendant Kaphan also issued a rules violation report

9    charging plaintiff with unauthorized possession of a state log book.  Plaintiff filed appeal 04-

10   02470 and requested return of the log book.  (Id. at 10.)  Defendants concede that plaintiff

11   exhausted the claims presented in this appeal.

12                **5.  Exhaustion - Naming of Defendants in Administrative Appeals**

13           Defendants argue that although eighteen defendants have been served in this

14   action, plaintiff exhausted his administrative remedies only with respect to claims against

15   defendants Johnson, Kile-Martinez, Rendon, Robinson, White, and Kaphan.  Defendants

16   maintain that plaintiff failed to exhaust with respect to his present claims against defendants

17   Allen, Purviance, Hansen, Williams, Baker, Medina, Clendenin, Barham, Sosa, Hill, Reyes, and

18   Mussen.  (Id. at 10.)  Defendants contend that proper exhaustion is mandatory and, therefore, the

19   court should dismiss the latter defendants from this action.  (Id. at 11.)

20                    **B.  Failure to State a Claim**

21           Defendants next argue that even plaintiff's exhausted claims fail to state

22   cognizable causes of action under § 1983.  (Id. at 11.)  First, defendants argue that plaintiff's

23   claims against defendants Johnson and Kile-Martinez relate merely to his reduction in work

24   status and loss of a clerical job and fail to state a cognizable claim under the Eighth Amendment,

25   Fourteenth Amendment, and First Amendment.  (Id. at 12.)  With respect to the Eighth

26   Amendment, defendants argue that neither a reduction in work status nor a removal from a

clerical job rise to the level of an "unnecessary and wanton infliction of pain" or a deprivation of the "minimal civilized measure of life's necessities" so as to satisfy the objective element of an Eighth Amendment violation.  With respect to the Fourteenth Amendment, defendants contend that plaintiff has no constitutional entitlement to a job in prison.  To the extent that plaintiff is attempting to present a substantive due process claim, defendants argue that it is subsumed under his First and Eighth Amendment claims.  (Id. at 14.)  Finally, with respect to plaintiff's First Amendment retaliation claim, defendants argue that plaintiff's reduction in work status and loss of his clerical job resulted from his creation of a memorandum on the personal letterhead of Jewish Chaplain Rabbi Book.  They contend that use of prison property, attempting to change operating policy and manipulate staff is not constitutionally protected behavior.  (Defs.' Mot. to Dismiss at 16.)

Second, defendants argue that plaintiff's claims against defendants Rendon and Robinson stem solely from plaintiff being asked to leave the room for five minutes during the rules violation hearing and fail to state cognizable claims.  (Id.)  With respect to plaintiff's First Amendment claim, defendants contend that plaintiff has no basis for asserting a constitutional violation.  They argue that plaintiff's disciplinary hearing related to his misuse of Rabbi Book's letterhead and that this is not constitutionally protected activity.  (Id. at 17.)  With respect to plaintiff's Eighth Amendment claim, defendants emphasize that the outcome of plaintiff's disciplinary hearing was a reduction of the rules violation charge from serious to administrative.  Plaintiff was merely counseled and reprimanded.  Defendants contend that such actions by prison officials do not amount to "unnecessary and wanton infliction of pain."  Finally, with respect to plaintiff's Fourteenth Amendment claim, defendants argue that there is no violation of due process absent an "atypical and significant hardship" and that plaintiff has no protected liberty interest in a disciplinary hearing.  (Id. at 18.)

Third, defendants argue that plaintiff's claim against defendants Johnson and Kile-Martinez relating to refusal to place plaintiff on a clerical job waiting list fails to state a

cognizable retaliation claim.  (Id. at 18.)  Defendants note that the UCC acted upon plaintiff's

request for program review.  In addition, defendants contend that plaintiff has failed to allege any

facts in support of his retaliation claim.  The UCC did not feel that plaintiff's placement on the

clerical waiting list was appropriate given his prior work-related issue.  The UCC also noted that

the clerical positions require trust and that plaintiff had violated that trust.  (Id. at 19.)  Plaintiff

was, however, placed on the textile waiting list.  Defendants contend that the UCC's decision

advanced legitimate penological goals.  (Defs.' Mot. to Dismiss at 19.)

Finally, defendants argue that plaintiff's claim against defendants White and

Kaphan related to the confiscation of plaintiff's log book fails to state a cognizable claim.  Before

the search of plaintiff's cell, defendant Wilkinson recognized the log book as a state book.

Defendants note that an inmate may possess only personal property received from authorized

sources as permitted by CDCR regulations.  Defendants contend that confiscation of plaintiff's

log book was authorized by CDCR regulations and did not amount to a constitutional violation.

(Id. at 20.)  With respect to plaintiff's Eighth Amendment claim, defendants argue that the log

book confiscation does not amount to "unnecessary and wanton infliction of pain."  With respect

to plaintiff's Fourteenth Amendment claim, defendants argue that plaintiff is unable to

demonstrate any property or protected liberty interest in his possession of a state log book.  In

addition, defendants contend that confiscation of contraband within a prison is not protected by

due process.  Finally, defendants assert that any First Amendment retaliation claim must fail.  In

this regard, they contend that plaintiff is not allowed to deface, alter or misuse state property and

note that the property confiscated belonged to the state.  Defendants argue that possession of a

state log book is not constitutionally protected under the First Amendment.  In addition, they

contend that confiscation of contraband advances legitimate penological goals of preserving

institutional order and discipline.  (Id. at 21.)

Defendants conclude that plaintiff's exhausted claims against six defendants, as

set forth in his four administrative appeals, fail to state cognizable causes of action under the

1   Eighth, Fourteenth, and First Amendments.  The actions taken by prison staff did not amount to a

2   deprivation of "the minimal civilized measure of life's necessities" in violation of the Eighth

3   Amendment and did not implicate a protected liberty or property interest triggering due process

4   under the Fourteenth Amendment.  Finally, defendants argue, the actions by plaintiff in

5   attempting to manipulate staff and in possessing state property were not protected activity under

6   the First Amendment.

7   **II.  Plaintiff's Opposition**

8          Plaintiff argues that, in addition to the four appeals which defendants concede he

9   pursued through the director's level, he also exhausted all claims presented in Appeal 05-00329.

10  (Pl.'s Opp'n to Def's. Mot. to Dismiss at 2.)  In this regard, plaintiff explains that he received a

11  letter from the director's level dated June 18, 2005, which stated "[t]he Second Level of review is

12  considered the department's final action in regard to Rules Violation Reports classified as

13  Administrative." (Pl.'s Opp'n to Def's. Mot. to Dismiss, Ex. 3.).

14         Plaintiff also argues that he attempted to pursue to completion of Appeal 04-

15  00010 as well as an appeal he filed on October 19, 2004 that was never assigned a log number

16  because it was screened and rejected at the informal level of appeal.  (Pl.'s Opp'n to Def's. Mot.

17  to Dismiss at 2; Compl. Exs. 5 & 36.)  Plaintiff explains that he submitted his October 19, 2004

18  administrative appeal three times and on his final attempt, the appeals coordinators returned it

19  unanswered.  Plaintiff claims he then sent that administrative appeal to the Inmate Appeals

20  Branch, which also returned it to him unanswered.  (Pl.'s Opp'n to Def's. Mot. to Dismiss at 3-4

21  & Ex. 5.)  Plaintiff contends that he was not permitted to pursue Appeal 04-00010 or the October

22  19, 2004 appeal to the highest level of review because of the actions of prison officials and the

23  CDCR Inmate Appeals Branch.  (Id. at 2.)  Plaintiff argues that when prison officials do not

24  respond to administrative appeals, the court should consider the appeals exhausted.  (Id. at 3.)

25         Finally, plaintiff argues that his complaint states a claim upon which relief can be

26  granted.  Plaintiff points to this court's June 5, 2006 order finding that plaintiff's complaint

1  appears to state a cognizable claim for relief against eighteen of the named defendants.  Plaintiff

2  concludes that defendants are improperly demanding that the court rule on an issue that it has

3  already ruled upon.  (Id. at 16.)

4  **III.  Legal Standards Applicable to a Motion to Dismiss Pursuant to Non-Enumerated Rule**

5  **12(b)**

6          By the Prison Litigation Reform Act of 1995 (PLRA), Congress amended 42

7  U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions

8  under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

9  prison, or other correctional facility until such administrative remedies as are available are

10  exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement "applies to all inmate suits about

11  prison life, whether they involve general circumstances or particular episodes, and whether they

12  allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

13          The Supreme Court has ruled that exhaustion of prison administrative procedures

14  is mandated regardless of the relief offered through such procedures.  Booth v. Churner, 532 U.S.

15  731, 741 (2001).  The Court has also cautioned against reading futility or other exceptions into

16  the statutory exhaustion requirement.  Id. at 741 n.6.  Because proper exhaustion is necessary, a

17  prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise

18  procedurally defective administrative grievance or appeal.  Woodford v. Ngo, __ U.S. __, 126 S.

19  Ct. 2378, 2382 (2006).

20          In California, prisoners may appeal "any departmental decision, action, condition,

21  or policy which they can demonstrate as having an adverse effect upon their welfare."  Cal. Code

22  Regs. tit. 15, § 3084.1(a).  Most appeals progress from an informal review through three formal

23  levels of review.  See Cal. Code Regs. tit. 15, § 3084.5.  A decision at the third formal level, also

24  referred to as the director's level, is not appealable and will conclude a prisoner's administrative

25  remedy.  Cal. Code Regs. tit. 15, §§ 3084.1(a) and 3084.5(e)(2).  A California prisoner is

26  required to submit an inmate appeal at the appropriate level and proceed to the highest level of

17

1   review available before filing suit.  Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005);

2   Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).

3          The PLRA exhaustion requirement is not jurisdictional but rather creates an

4   affirmative defense that a defendant may raise in a non-enumerated Rule 12(b) motion.  Jones v.

5   Bock, __U.S. __, __, 127 S. Ct. 910, 921 (2007) ("[I]nmates are not required to specially plead or

6   demonstrate exhaustion in their complaints."); Wyatt v. Terhune, 315 F.3d 1108, 1117-19 & nn.9

7   & 13 (9th Cir.), cert. denied sub nom. Alameida v. Wyatt, 540 U.S. 810 (2003).  The defendant

8   bears the burden of raising and proving the absence of exhaustion.  Wyatt , 315 F.3d at 1119.  "In

9   deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look

10  beyond the pleadings and decide disputed issues of fact."  Id. at 1119-20.  "I[f] the district court

11  looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to

12  exhaust–a procedure closely analogous to summary judgment–then the court must assure that

13  [the prisoner] has fair notice of his opportunity to develop a record."[3]  Id. at 1120 n.14.  When

14  the district court concludes that the prisoner has not exhausted administrative remedies on a

15  claim, "the proper remedy is dismissal of the claim without prejudice."  Id. at 1120.  See also

16  Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005), cert. denied ___U.S.___, 127 S. Ct. 1212

17  (2007).  On the other hand, "if a complaint contains both good and bad claims, the court proceeds

18  with the good and leaves the bad."  Jones, 127 S. Ct. at 924.

19  **IV.  Discussion**

20          **A.  Exhaustion**

21          Seven of plaintiff's appeals are potentially relevant to the pending motion:

22  Appeals 04-00698, 04-01113, 04-01856, 04-02470, 05-00329, 04-00010, and an appeal filed

23  October 19, 2004.  Defendants concede that plaintiff exhausted the claims presented in four of

24  his appeals but argue that those administrative appeals implicate claims against only six of the

25  _____

26  [3]  Plaintiff was notified of the requirements for opposing a motion to dismiss brought
    pursuant to non-enumerated Rule 12(b) on July 11, 2006.  (Order filed July 11, 2006 at 3-4.)

named defendants. Plaintiff argues that he exhausted the claims presented in five of his appeals

and that the court should consider two other appeals exhausted because defendants' conduct

prohibited him from reaching the director's level of review on those appeals.

The court finds that plaintiff exhausted the claims presented in administrative

appeals 04-00698, 04-01113, 04-01856 and 04-02470.[4] More specifically, the court finds that

plaintiff exhausted his First Amendment retaliation claim against defendants Johnson, Kaphan

Kile-Martinez, Rendon, Robinson, and White as well as against defendants Allen, Baker,

Barham, Clendenin, Hansen, Hill, Medina, Mussen, Purviance, Reyes, Robinson, and Sosa. The

court also finds that plaintiff exhausted his Fourteenth Amendment due process claim against

defendants Johnson, Kaphan, Kile-Martinez, Rendon, Robinson, and White. Finally, the court

finds that plaintiff exhausted his Eighth Amendment claim against defendants Johnson, Kaphan,

Kile-Martinez, Rendon, Robinson, and White as well as against defendant Baker.

### 1. Plaintiff's First Amendment Retaliation Claim

Plaintiff alleges that defendants have retaliated against him for filing a staff

misconduct complaint against defendant Baker in violation of his First Amendment rights.

Defendants do not dispute that plaintiff pursued four administrative grievances through the

director's level. Defendants contend, however, that plaintiff's administrative grievances only

relate to two limited situations, implicating no more than six of the eighteen named defendants.

Defendants conclude that plaintiff's retaliation claim against the other defendants should

therefore be dismissed for failure to exhaust administrative remedies.

The court finds that, contrary to defendants' argument, in several of his

administrative grievances plaintiff put prison officials on notice of his broad claim of ongoing

---

[4] Plaintiff failed to properly exhaust his claims presented in Appeals 04-00010, 05-00329 and the appeal he filed October 19, 2004. As noted above, a prisoner must pursue an administrative grievance through the director's level before filing a lawsuit. Cal. Code Regs. tit. 15, §§ 3084.1(a) & 3084.5(e)(2). A prisoner does not satisfy the exhaustion requirement by filing an untimely or defective appeal. Woodford, 126 S. Ct. at 2382.

1   retaliation claim, implicating all of the named defendants.  For example, in one administrative

2   grievance, plaintiff described that prison officials' decision, rejecting his request to be added to

3   the clerical waiting list, was "possibly part of a pattern of retaliation imposed on [him] for filing

4   a staff complaint for sexual harassment/misconduct."  (Defs'. Mot. to Dismiss at Ex. D.)  In

5   another grievance, plaintiff maintained that he believed prison officials demoted him from A1A

6   to A2B status because he filed a report about an incident of sexual misconduct.  Plaintiff even

7   cited the relevant administrative section that prohibits Department of Corrections staff from

8   retaliating against inmates who file such complaints.  Cal. Code Regs. tit. 15, § 3401.5 (2007).[5]

9   In that same appeal, plaintiff requested "[n]o further reprisals or retaliation taken."  (Defs'. Mot.

10  to Dismiss at Ex. B.)

11          Defendants cannot persuasively argue that prison authorities were not aware of

12  plaintiff's broad retaliation claim.  In fact, prison authorities expressly acknowledged the claim

13  and addressed it in several of their decisions.  For example, in response to plaintiff's appeal

14  referenced above, the second level of review opened its decision, stating that: "appellant

15  contends that the committee's decision to not place him on the clerk's waiting list 'is arbitrary

16  and possibly part of a pattern of retaliation imposed on him for filing a staff complaint for sexual

17  harassment misconduct.'" (Defs'. Mot. to Dismiss at Ex. D.)  Although the second level of

18  review made no further mention of plaintiff's broad retaliation claim in denying his appeal,

19  /////

20  /////

21  /////

22  /////

23  /////

24

25  [5] Section 3401.5(f) prohibits retaliation against inmates who report incidents of sexual misconduct.  Retaliatory measures include, "coercion, threats of punishment, or any other activities intended to discourage or prevent an inmate/parolee from reporting sexual

26  misconduct."  Id. § 3401.5(f).

1    prison officials' failure to address the claim does not detract from the fact that they were on

2    notice of it.[6]

3                Similarly, in response to that same appeal the director's level decision stated as

4    follows:

5                      [i]t is the appellant's position that he was inappropriately denied
                       placement on the clerical waiting list by the Unit Classification
6                      Committee (UCC).  The appellant contends that the UCC decision
                       to not place him on the waiting list is arbitrary and possibly part of
7                      a pattern of retaliation imposed for filing a Staff Complaint for
                       Sexual Harassment/Misconduct.
8
                                              ***
9
                       The appellant has not submitted any evidence to show that he is
10                     being treated with any form of discrimination or prejudice. . . . The
                       appellant failed to provide any evidence and/or argument to
11                     support his allegations that the UCC's decision to not place him on
                       a clerical waiting list is [a] form of harassment.
12

13   (Defs'. Mot. to Dismiss at Ex. D).  Given that prison authorities recognized and addressed

14   plaintiff's broad retaliation claim, defendants cannot now contend that they did not have

15   sufficient notice of it.

16                Nor can defendants persuasively argue that plaintiff's retaliation claim implicates

17   only six of the defendants.  Although plaintiff may not have specifically identified all of the

18   defendants in his administrative grievances, that is of no import in resolving the pending motion

19   to dismiss.  The Supreme Court has clearly indicated that "exhaustion is not per se inadequate

20   simply because an individual later sued was not named in the grievances."  See Jones, 127 S. Ct.

21   /////

22   /////

23   _____

24        [6] Prison officials often made no mention of plaintiff's retaliation claims or requests to
     prohibit any further reprisals and retaliation.  However, their decisions to bypass or ignore his
     retaliation claim was no fault of plaintiff.  If prison officials believed plaintiff's claim was not
25   clear, they would have rejected it or requested clarification.  See Cal. Code Regs. tit. 15, §
     3084.3.  This is something they did frequently in response to plaintiff's many administrative
26   grievances.

1    at 923.[7]  The Court in <u>Jones</u> reasoned that promoting early notice to prison officials who

2    prisoners may later sue is not the purpose of the exhaustion requirement.  Jones, 127 S. Ct. at 923

3    (citing <u>Johnson v. Johnson</u>, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary

4    purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a

5    particular official that he may be sued; the grievance process is not a summons and complaint

6    that initiates adversarial litigation.")).  Rather, the Court observed, the purpose underlying the

7    exhaustion requirement is to allow prison officials to address complaints about the programs they

8    administer before being subject to suit, thereby reducing litigation to the extent complaints are

9    satisfactorily resolved.  <u>See</u> <u>Jones</u>, 127 S. Ct. at 923.

10           Similarly, although plaintiff may not have described each alleged instance of

11   retaliation in his appeals, prisoners are not required to include detailed factual background or

12   legal arguments in their administrative grievances.  <u>See</u> <u>e.g.</u>, <u>Strong v. David</u>, 297 F.3d 646, 650

13   (7th Cir. 2002); <u>see also</u> <u>Irvin v. Zamora</u>, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001) ("As long

14   as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require

15   a prisoner plaintiff to present fully developed legal and factual claims at the administrative

16   level.").  In addressing the detail prisoners must include in administrative grievances in order to

17   satisfy the PLRA's exhaustion requirement, it has been held that:

18   /////

19

20           [7] In <u>Jones</u>, two prisoners filed suits that were subsequently dismissed because they had
     not identified each defendant in their administrative grievances.  127 S. Ct. at 922.  Rejecting the
21   "name-all-defendants" rule, the Court held that "exhaustion is not <u>per se</u> inadequate simply
     because an individual later sued was not named in the grievances."  <u>Id.</u> at 923.  The Court
22   explained that nothing in the PLRA requires that the plaintiff name all of the defendants during
     the grievance process.  <u>Id.</u> at 922.  The Court noted that the PLRA only requires exhaustion of
23   "such remedies as are available."  <u>Id.</u> at 922 (quoting 42 U.S.C. § 1997(e)).  In addition, the
     Court explained that "Nothing in the MDOC [Michigan Department of Corrections] policy itself
24   supports the conclusion that the grievance process was improperly invoked simply because an
     individual later named as a defendant was not named at the first step of the grievance process."
25   Id. at 922.  The Court observed that, at the time the prisoners had filed their grievances, the
     Michigan Department of Corrections policy only told prisoners to "be as specific as possible."
26   <u>Id.</u> at 922.

1
2
3
4
5

> [a] grievance suffices if it alerts the prison to the nature of the
> wrong for which redress is sought.  As in a notice-pleading system,
> the grievant need not lay out the facts, articulate legal theories, or
> demand particular relief.  All the grievance need do is object
> intelligibly to some asserted shortcoming.  [The plaintiff's] two
> grievances were comprehensible and contained everything that
> Illinois instructed him to include.  Defendants can't complain that
> he failed to do more.

6   Strong, 297 F.3d at 650.  The same is true in California prisons.  Irvin, 161 F. Supp. 2d at 1135;

7   Scott v. Suryadevara, No. 1:05-CV-01282 OWW WMW, 2007 WL 2016389, *3-4 (E.D. Cal.

8   July 6, 2007) ("[T]he only detail requested by the CDCR 602 grievance form is that the inmate

9   'Describe Problem' and state what the 'Action Requested' is.")

10          Defendants have not pointed to any authority to support their narrow

11  interpretation of plaintiff's grievances.  Neither the PLRA nor CDCR procedures require plaintiff

12  to include the degree of factual particularity defendants would seemingly require.  The PLRA

13  only requires exhaustion of "such remedies as are available."  Jones, 127 S. Ct. at 922 (quoting

14  42 U.S.C. § 1997(e)).  To satisfy the PLRA exhaustion requirement, a prisoner must complete

15  the administrative review process in accordance with the applicable procedural rules put in place

16  by the prison.  Jones, 127 S. Ct. at 922-23.  As noted above, California regulations provide that

17  prisoners may appeal "any departmental decision, action, condition, or policy which they can

18  demonstrate as having an adverse effect upon their welfare."  Cal. Code Regs. tit. 15, §

19  3084.1(a).  The language of the regulation is included in the first sentence on the standard inmate

20  appeal form:  "You may appeal any policy, action or decision which has a significant adverse

21  affect [sic] upon you."  The form merely instructs the prisoner to "Describe Problem" and state

22  the "Action Requested."  Nowhere does the form instruct prisoners as to who must be named in

23  the grievance.  In fact, when the prisoner proceeds to the second level of appeal, he is only

24  instructed to explain why he is dissatisfied with the response he received.  Similarly, at the third

25  level, he is required to "add data or reasons for requesting a Director's Level Review."  Plaintiff

26  /////

1 complied with the requisite exhaustion requirements and, throughout his four appeals, provided

2 prison officials with sufficient notice of his broad retaliation claim.

3       The court concludes that plaintiff exhausted his First Amendment retaliation

4 claim against the named defendants.  Accordingly, defendants' motion to dismiss plaintiff's

5 retaliation claim against defendants Allen, Baker, Barham, Clendenin, Hansen, Hill, Medina,

6 Mussen, Purviance, Reyes, Robinson, and Sosa for failure to exhaust administrative remedies

7 should be denied.

8              **2.  Plaintiff's Fourteenth Amendment Due Process Claim**

9       Plaintiff alleges that defendants have violated his due process rights in violation of

10 the Fourteenth Amendment.  Again, defendants contend that plaintiff's administrative grievances

11 related only to two limited situations, implicating no more than six of the eighteen defendants,

12 namely, defendants Johnson, Kile-Martinez, Rendon, Robinson, White, and Kaphan.  Defendants

13 conclude that plaintiff's due process claim against the other defendants, namely Allen, Baker,

14 Barham, Clendenin, Hansen, Hill, Medina, Mussen, Purviance, Reyes, Robinson, and Sosa,

15 should therefore be dismissed for failure to exhaust administrative remedies.

16       The court agrees with defendants that, at most, plaintiff put prison officials on fair

17 notice of his potential due process claim against defendants Johnson, Kile-Martinez, Rendon,

18 Robinson, White, and Kaphan.  For example, in one administrative grievance, plaintiff described

19 how defendants Johnson and Kile-Martinez demoted him from A1A to A2B status based on an

20 unissued rules violation report in order to "save time."  (Defs'. Mot. to Dismiss at Ex. B.)  In

21 another grievance, plaintiff requested review of "improper process."  Plaintiff described how

22 defendant Rendon ordered plaintiff to leave the room during his disciplinary hearing so that he

23 could speak to a witness in private.  Defendant Rendon subsequently found plaintiff guilty of the

24 rules violation.  Defendant Johnson then reviewed the guilty finding.  (Defs'. Mot. to Dismiss at

25 Ex. C.)  In yet another grievance, plaintiff explained how defendant Martinez arbitrarily refused

26 to place him on the clerical waiting list and applied the classification process without due

process.  (Defs'. Mot. to Dismiss at Ex. D.)  Finally, in another administrative appeal, plaintiff

described how defendants White and Kaphan improperly confiscated his log book.  Plaintiff

maintained that the log book was not state-issued, but rather, was his property that contained his

confidential and legal materials.  (Defs'. Mot. to Dismiss at Ex. E.)

        The court is unable to find that plaintiff exhausted his current due process claim

against defendants Allen, Baker, Barham, Clendenin, Hansen, Hill, Medina, Mussen, Purviance,

Reyes, Robinson, and Sosa.  Although plaintiff was not required to name specific defendants or

articulate fully developed legal and factual claims, he was required to complain about a problem

that he can now in good faith allege involved the named defendants.  The court is unable to

identify any allegations in the complaint that would even suggest a cognizable due process claim

against these defendants since according to plaintiff's own allegations they do not appear to have

been involved in any way in the administrative proceedings about which plaintiff complains.

Likewise, plaintiff's assertions in his administrative grievances were insufficient to put prison

officials on notice as to the existence of a due process claim against these defendants.[8]

        The court concludes that plaintiff exhausted his due process claim against

defendants Johnson, Kaphan Kile-Martinez, Rendon, Robinson, and White.  Accordingly,

defendants' motion to dismiss plaintiff's due process claim against the remaining defendants,

namely Allen, Baker, Barham, Clendenin, Hansen, Hill, Medina, Mussen, Purviance, Reyes,

Robinson, and Sosa, for failure to exhaust administrative remedies should be granted.

### 3. Plaintiff's Eighth Amendment Claim

        Plaintiff alleges that defendants have violated his right to be free from cruel and

unusual punishment in violation of the Eighth Amendment.  Plaintiff bases this Eighth

/////

---

[8]  Although defendants have presented this issue as one of non-exhaustion, it would be more appropriately addressed as a failure to state a claim since the complaint does not provide allegations sufficient to implicate these defendants in the alleged due process violation.  In any event, the result of dismissal is the same.

25

1   Amendment claim on his allegations regarding defendant Baker's sexual harassment and the

2   retaliation taken against him by the other defendants when he complained about Baker's conduct.

3        Defendants again contend that plaintiff's administrative grievances only relate to

4   two limited situations, implicating no more than six of the eighteen defendants, namely,

5   defendants Johnson, Kile-Martinez, Rendon, Robinson, White, and Kaphan.  Defendants

6   conclude that plaintiff's Eighth Amendment claim against the other defendants should therefore

7   be dismissed for failure to exhaust administrative remedies.

8        As already noted, defendants have the burden to raise and prove the affirmative

9   defense of failure to exhaust administrative remedies.  See Jones, 127 S. Ct. at 921; Wyatt, 315

10  F.3d at 1119 & n.13.  The court finds that, contrary to defendants' argument, in several of

11  plaintiff's administrative grievances plaintiff put prison officials on notice of his claim that Baker

12  had sexually harassed him and that a wide range of prison staff had retaliated against him when

13  he complained about Baker, all in violation of his rights under the Eighth Amendment.

14  Defendants have not met their burden of proof with respect to the affirmative defense of failure

15  to exhaust administrative remedies.  Accordingly, defendants' motion to dismiss plaintiff's

16  Eighth Amendment claim for failure to exhaust administrative remedies should be denied.[9]

17                     **4. Exhaustion - Summary**

18       For the reasons set forth above, the court has found that plaintiff's First and

19  Eighth Amendment claims are fully exhausted.  Plaintiff's due process claim has been found to

20  be exhausted as to defendants Johnson, Kile-Martinez, Rendon, Robinson, White, and Kaphan

21  but not as to defendants Allen, Baker, Barham, Clendenin, Hansen, Hill, Medina, Mussen,

22  Purviance, Reyes, Robinson, and Sosa because there are no allegations that they were involved in

23  the administrative proceedings being challenged by plaintiff.

24  /////

25  

26     [9]  The fact that the Eighth Amendment claim is exhausted, of course, does not mean that it is cognizable.  That issue will be addressed below.

**B.  Cognizable Claims**

Plaintiff has alleged that the defendants have violated his constitutional rights under the First Amendment, Eighth Amendment and Fourteenth Amendment.  Defendants argue that plaintiff has failed to state a claim upon which relief can be granted.  A motion brought pursuant to Rule 12(b)(6) is a challenge to the sufficiency of the pleading.  In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  Pro se pleadings must be held to a less stringent standard than formal pleadings drafted by lawyers, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), and the court must liberally construe a pro se litigant's inartful pleading, Ortez v. Washington County, 88 F.3d 804, 807 (9th Cir. 1996).

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, ___ U.S. ___, ___, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  To survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 127 S. Ct. at 1965.

Upon consideration of the complaint and subsequent briefing by the parties, the undersigned finds that plaintiff may be able to prove facts in support of his claims under the First and Fourteenth Amendments.  However, construing plaintiff's pro se pleadings in the light most favorable to him and resolving all doubts in his favor, the undersigned finds that plaintiff has failed to state a cognizable claim for relief under the Eighth Amendment.

/////

1           It is well established that the unnecessary and wanton infliction of pain constitutes

2  cruel and unusual punishment in violation of the Eighth Amendment.  Whitley v. Albers, 475

3  U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429

4  U.S. 97, 105-06 (1976).   However, neither accident nor negligence constitutes cruel and unusual

5  punishment, for "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that

6  characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."  Whitley,

7  475 U.S. at 319.  To prevail on any claim of cruel and unusual punishment, a prisoner must prove

8  facts that satisfy a two-part test.  First, the prisoner must prove that objectively he suffered a

9  sufficiently serious deprivation.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  Second, the

10  prisoner must prove that subjectively each defendant acted with deliberate indifference in

11  allowing or causing the prisoner's deprivation to occur.  Id. at 299.

12           Here, plaintiff's allegations fail to satisfy the first part of the applicable test.  In

13  essence, plaintiff's claim is that defendants' retaliation and defendant Baker's sexual harassment

14  constituted cruel and unusual punishment in violation of the Eighth Amendment.  (Compl. at 19-

15  20.)  First, however, plaintiff's retaliation claim is properly addressed only under the First

16  Amendment and not the Eighth Amendment.  Second, plaintiff has not alleged facts regarding

17  defendant Baker's alleged sexual harassment sufficient to rise to the level of an Eighth

18  Amendment violation.  Plaintiff has merely described in his complaint several instances where

19  Baker has directed crude comments or gestures towards him.  He has failed to allege facts

20  demonstrating that defendant Baker has deliberately subjected him to unnecessary and wanton

21  infliction of pain.  In a case with somewhat similar allegations, the Ninth Circuit has observed:

22          Austin alleged various Eighth Amendment violations that were
           properly dismissed on summary judgment. Although prisoners

23          have a right to be free from sexual abuse, whether at the hands of
           fellow inmates or prison guards, see Schwenk v. Hartford, 204 F.3d

24          1187, 1197 (9th Cir.2000), the Eighth Amendment's protections do
           not necessarily extend to mere verbal sexual harassment. See e.g.,

25          Blueford v. Prunty, 108 F.3d 251, 254-55 (9th Cir.1997) (holding
           that prison guard who engaged in "vulgar same-sex trash talk" with

26          inmates was entitled to qualified immunity); Somers v. Thurman,

1
    109 F.3d 614, 624 (9th Cir.1997). Williams was in an elevated,
    glass-enclosed control booth when he exposed himself to Austin
2
    and this isolated incident lasted for a period of no more than 30-40
    seconds. Williams never physically touched Austin. In the light of
3
    these facts, the district court properly concluded that this incident
    was not sufficiently serious to constitute an Eighth Amendment violation.
4

5   Austin v. Terhune, 367 F.3d 1167, 1171-72 (9th Cir. 2004).  See also Oltarzewski v. Ruggiero,

6   830 F.2d 136, 139 (9th Cir. 1987) (vulgar language and verbal harassment do not state a

7   constitutional deprivation under § 1983).  Plaintiff has also failed to demonstrate that any other

8   named defendant has subjected him to sexual abuse or other inhumane conditions of

9   confinement.  This is not a case where defendants have allegedly denied plaintiff adequate food,

10  clothing, shelter, safety or medical care.  Accordingly, defendants' motion to dismiss plaintiff's

11  Eighth Amendment claim for failure to state a claim should be granted.

12  **PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL COMPLAINT**

13  **AND MOTION FOR APPOINTMENT OF COUNSEL**

14      Plaintiff has several other motions pending before the court.  First, plaintiff has

15  filed a motion for leave to file a supplemental complaint.  Defendants have opposed the motion

16  and plaintiff has filed a reply.  Plaintiff seeks to supplement his complaint with allegations

17  concerning events that have occurred since he filed this lawsuit.  As noted above, prisoners are

18  required to exhaust their administrative remedies before filing suit.  Accordingly, plaintiff's

19  motion for leave to file a supplemental complaint will be denied.[10]

20      Plaintiff also requests that, in the event the court denies his motion, the court

21  accept his supplemental complaint as a new and separate lawsuit and authorize service of the new

22  complaint on the named defendants.  It appears, however, that plaintiff has already filed a new

23  /////

24

25  [10]  Plaintiff's proposed supplemental complaint also fails to comply with Local Rule 15-220, which provides that "every pleading to which an amendment or supplement is permitted as a matter of right or has been allowed by Court order shall be retyped and filed so that it is complete
26  in itself without reference to the prior or superceded pleading."  E.D. Cal. Local Rule 15-220.

1 complaint as a separate action in this court.  See Case No. CIV S-07-1307 WBS GGH P.

2 Accordingly, plaintiff's request will be denied as moot.

3       Finally, plaintiff has attached to his supplemental complaint a motion for

4 appointment of counsel.  The United States Supreme Court has ruled that district courts lack

5 authority to require counsel to represent indigent prisoners in § 1983 cases.  Mallard v. United

6 States Dist. Court, 490 U.S. 296, 298 (1989).  In certain exceptional circumstances, the district

7 court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1).  Terrell

8 v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36

9 (9th Cir. 1990).

10       The test for exceptional circumstances requires the court to evaluate the plaintiff's

11 likelihood of success on the merits and the ability of the plaintiff to articulate his claims pro se in

12 light of the complexity of the legal issues involved.  See Wilborn v. Escalderon, 789 F.2d 1328,

13 1331 (9th Cir. 1986); Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983).  Circumstances

14 common to most prisoners, such as lack of legal education and limited law library access, do not

15 establish exceptional circumstances that would warrant a request for voluntary assistance of

16 counsel.  In the present case, the court does not find the required exceptional circumstances.

17 Accordingly, plaintiff's motion for appointment of counsel will be denied.

18 **CONCLUSION**

19       IT IS HEREBY ORDERED that:

20       1.  Plaintiff's July 2, 2007 motion for leave to file a supplemental complaint is

21 denied; and

22       2.  Plaintiff's July 2, 2007 motion for appointment of counsel is denied.

23       IT IS HEREBY RECOMMENDED that defendants' motion to dismiss plaintiff's

24 complaint should be granted in part and denied in part as follows:

25 /////

26 /////

1        1.  Defendants' motion to dismiss plaintiff's complaint for failure to exhaust

2   administrative remedies be denied as to plaintiff's First Amendment and Eighth Amendment

3   claims.

4        2.  Defendants' motion to dismiss plaintiff's complaint for failure to exhaust

5   administrative remedies as to plaintiff's due process claim be granted as to defendants Allen,

6   Baker, Barham, Clendenin, Hansen, Hill, Medina, Mussen, Purviance, Reyes, Robinson, and

7   Sosa and denied as to the other named defendants.

8        3.  Defendants' motion to dismiss plaintiff's complaint for failure to state a

9   retaliation claim under the First Amendment and failure to state a due process claim be denied;

10       4.  Defendants' motion to dismiss plaintiff's complaint for failure to state a claim

11  under the Eighth Amendment be granted; and

12       5.  In accordance with the above and Rule 12(a)(4)(A) of the Federal Rules of

13  Civil Procedure, all defendants remaining in this action be directed to file a responsive pleading

14  to plaintiff's complaint.

15       These findings and recommendations are submitted to the United States District

16  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fifteen

17  days after being served with these findings and recommendations, any party may file written

18  objections with the court and serve a copy on all parties.  Such a document should be captioned

19  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

20  shall be served and filed within five days after service of the objections.  The parties are advised

21  that failure to file objections within the specified time may waive the right to appeal the District

22  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

23  DATED: August 31, 2007.

24

25

26  DAD:9
    mast0192.57rev

    DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE