# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DANIEL J. MASTERSON**, | No. 2:05-cv-0192-AK |
| Plaintiff, | |
| v. | **ORDER** |
| **ROSANNE CAMPBELL et al.**, | |
| Defendants. | |

Masterson claims that the defendants retaliated against him for reporting sexual harassment by Jeffrey Baker, a correctional officer at Mule Creek State Prison. Prison officials allegedly took away Masterson's job, reduced his work status and privileges classification, denied his request to be considered for a clerical position and confiscated his property during two cell searches. Masterson also claims he was denied due process because the prison punished him on two separate occasions without giving him a fair hearing. These are the only claims, all filed under 42 U.S.C. § 1983, that survived an earlier motion to dismiss (see docket entries 45 and 48). Baker and the other defendants filed separate motions for summary judgment (docket entries 131 and 144). Baker also filed a motion to

dismiss as unexhausted Masterson's claims stemming from the cell search conducted on November 4, 2003 (docket entry 132).

In ruling on the motion to dismiss, I've construed Masterson's pro se complaint liberally and accepted its allegations as true.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009); Erickson v. Pardus, 551 U.S. 89, 94 (2007).  I've considered the pleadings in the light most favorable to Masterson and resolved all doubts in his favor.  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  In ruling on the motions for summary judgment, I've drawn all reasonable inferences in Masterson's favor.  See Edwards v. Wells Fargo & Co., 606 F.3d 555, 557 (9th Cir. 2010).  Defendants have the initial burden of identifying an "absence of evidence to support [Masterson's] case."  Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1229 (9th Cir. 2000).  The burden then shifts to Masterson to move beyond mere allegations and present a genuine factual issue for trial.  Id.

## I.   Retaliation Claims

Masterson ultimately must prove that a state actor chilled his First Amendment rights by taking an adverse action against him because he engaged in protected conduct.  Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005).  He must also show that the action didn't reasonably advance a legitimate correctional

goal.  Id. at 567–68.  Masterson alleges that the defendants took four such retaliatory actions against him in 2004:

**First**, the Unit Classification Committee reduced Masterson's work status and privileges on March 24 and removed him from his job as a clerk for Rabbi Book, the Jewish chaplain, pending a disciplinary hearing.  **Second**, Masterson was found guilty the next month based on a Rules Violation Report alleging he had manipulated staff.  **Third**, the Committee denied Masterson's request to be placed on a waiting list for another clerical job.  **Fourth**, an officer searched Masterson's cell on November 29 and confiscated a state log book, which is ordinarily used by officers to record daily activities for the next shift.  Masterson claims he was using the log book to keep a record of officer misconduct, including sexual harassment.  He was again issued a Rules Violation Report and found guilty.[1]

Masterson's first three claims do not survive summary judgment because the state actions at issue reasonably advanced a legitimate penological purpose.

---

[1] Masterson also alleges that an officer confiscated his personal property during a retaliatory cell search on November 4, 2003.  He concedes that he did not submit an inmate grievance for the search, writing to prison staff at the time that he was "not asking for any action to be taken" but would complain "[s]hould any further issues or allegations arise."  Baker's motion to dismiss this claim as unexhausted is granted.  See Ngo v. Woodford, 539 F.3d 1108, 1109–10 (9th Cir. 2008).  The November 4 search isn't the subject of any of the four claims this court previously found exhausted.  And Masterson can't rely on Appeal No. 04-00010, which dealt with a different alleged incident, because this court has already found that appeal unexhausted (docket entry 45, at 19 n.4).

Masterson does not dispute that he used Rabbi Book's personal letterhead, without his permission, to draft a memorandum requesting that doors to the chapel remain unlocked.[2]  The incident set in motion Masterson's removal from his position as clerk, the finding that he had manipulated staff and the denial of his request to be put on a waiting list for a different clerical position.  The Committee reasonably concluded that "clerical positions are jobs that require a certain degree of trust being placed in the inmate assigned to them.  It is felt that based on his misuse of state materials/equipment coupled with his manipulation of staff within his work environment, [Masterson] has violated any level of trust that staff may have placed in him."  The Committee therefore put Masterson on a waiting list for a job making textile products.  Prison officials had cause to remove Masterson from his position, find him guilty of the rules violation and not put him on the clerical position waiting list.  As a result, Masterson cannot carry his "burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains."  Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

---

[2] In opposing the defendants' statement of undisputed facts, Masterson seems to say he had Rabbi Book's permission (docket entry 151).  But he points to evidence that he was permitted to have certain office supplies in his possession, not that he was authorized to draft memoranda as if he were Rabbi Book.  Defendants submitted evidence that they took action against Masterson after Rabbi Book confirmed that he had given no such authorization.  And Masterson conceded during his deposition that he wasn't supposed to use Rabbi Book's letterhead.

Defendants are also entitled to summary judgment on Masterson's fourth claim.  Everyone agrees that prison staff ordered a search of Masterson's cell and confiscated a state log book from him on November 29.  Prisoners are prohibited from possessing unauthorized state materials.  See Cal. Code Regs. tit. 15 §§ 3000, 3006, 3152(a).[3]  Masterson argues that enforcing the regulations was a pretext for retaliating against him for recording misconduct, but he doesn't point to any evidence that would allow a reasonable jury to agree.  He leans on the fact that defendant White ordered a cell search after he found out that Masterson possessed a log book, but it's perfectly natural that a prison guard would order such a search after discovering that an inmate possessed contraband.  Masterson provides no evidence that the cell search was ordered for some other, unlawful, reason.  Similarly, Masterson proves nothing by stressing that defendant Kaphan confiscated the log book and issued a rules violation report only after he found out the book existed.  What else should a guard do in such circumstances?

Nor does Masterson get anywhere by showing that he told an officer that he believed the search was an act of retaliation.  See Keyser v. Sacramento City

---

[3] Masterson insists that prison staff have discretion to issue state log books. But he hasn't produced any evidence to show that he was issued a log book.  The only thing he cites is a memo showing he was permitted to have office supplies because he was a clerk.  Moreover, Masterson no longer claims—as he did at his disciplinary hearing—that he was actually authorized to possess the particular log book at issue here.

Unified Sch. Dist., 265 F.3d 741, 752–53 n.5 (9th Cir. 2001) ("Mere opinions and beliefs that [the] actions were retaliatory . . . are not enough to create a genuine issue of material fact on the issue of pretext."). That the same officer had taken no disciplinary action against Masterson after he told her he was keeping a log of misconduct doesn't prove that White and Kaphan had an improper motive when they enforced the rules against contraband. See id. The earlier guard may not have realized Masterson was using unauthorized state materials, or may have exercised her discretion to overlook a minor infraction. None of this proves, even remotely, that White and Kaphan acted out of improper motive. Masterson points to nothing else to support his opposition.

## II.   Due Process Claims

Masterson also argues that he was deprived of due process when the defendants punished him without first giving him a fair chance to contest the two rules violation reports. The Supreme Court has held that when a prison disciplinary hearing implicates a protected liberty interest, the inmate must receive (1) advanced written notice of the charges; (2) an opportunity to call witnesses and present evidence, when it's consistent with institutional safety and correctional goals; and (3) a written statement by the factfinder of the reasons and

evidence supporting the disciplinary action.  <u>Superintendent</u> v. <u>Hill</u>, 472 U.S. 445, 454 (1985); <u>see</u> <u>Berry</u> v. <u>Bunnell</u>, 39 F.3d 1056, 1057 (9th Cir. 1994) (per curiam).

Masterson received notice of both Rules Violation Reports before his hearings, and he was permitted to question witnesses.  He also received a written decision from the hearing officer in both cases.  And there was significant evidence supporting the charges against him.  <u>See</u> <u>Hill</u>, 472 U.S. at 455 (requiring at least "some evidence").  Masterson nonetheless argues he was denied due process both times.  For the first violation, the defendants allegedly reduced his work status and privileges before notifying him of the manipulation-of-staff charge.  And the hearing officer in that case allegedly questioned a witness outside of Masterson's presence.  <u>See</u> Cal. Code Regs. tit. 15 § 3320(j).  For the second violation, Masterson claims that the hearing officer denied him the right to question the reporting officer.  <u>See</u> Opp'n to Defs.' Statement of Undisputed Facts ¶¶ 57–58 (docket entry 151).

Masterson can't prevail on his claims related to the first violation because he wasn't deprived of any protected liberty interest.  Three things happened to Masterson as a result of his writing an unauthorized memo on Rabbi Book's letterhead.  First, he lost his job.  Second, he was demoted from Work Group A-1 to Work Group A-2, which simply reflected the fact that he no longer had a full-

time position and did not affect his ability to earn credits under Penal Code section 2933.  See Cal. Code Regs. tit. 15 § 3044(b)(2)–(3).  And he was demoted from Privilege Group A to Privilege Group B, which meant fewer possible family visits, reduced telephone access, and limits on canteen purchases.  Id. § 3044(d)–(e).

Taking away Masterson's job and assigning him to different work and privilege groups did not enhance his sentence in "such an unexpected manner as to give rise to protection by the Due Process Clause of its own force," or impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Ghana v. Pearce, 159 F.3d 1206, 1209 (9th Cir. 1998) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)); see Walker v. Gomez, 370 F.3d 969, 973 (9th Cir. 2004) (Due Process Clause does not create a "property or liberty interest in prison employment"); Wyatt v. Swearingen, No. C 06-4228, 2010 WL 135322, at *8–9 (N.D. Cal. Jan. 5, 2010) (one-year assignment to Work Group C and Privilege Group C did not create an atypical or significant hardship).

Masterson's challenge to the second disciplinary hearing is factually baseless.[4]  He argues that he was denied the right to have the employee who

---

[4] It's also not clear that there's a protected liberty interest at stake.  At the hearing for possession of the log book, the charge was classified as serious and Masterson was "ASSESSED 30 DAYS LOSS OF CREDIT CONSISTENT WITH A DIVISION 'F' OFFENSE."  But Masterson agreed when asked during his deposition, "[Y]ou are in for life without the possibility of parole so loss of credits

(continued...)

reported his possession of a log book present at the disciplinary hearing or available to answer questions by speakerphone.  See Cal. Code Regs. tit. 15 § 3315(e)(4).  Masterson's own evidence shows that the hearing officer granted his request but was unable to contact the reporting employee.  Masterson was given the option of postponing the hearing so the employee could be found and made available, but he refused.

### III.  Conclusion

Masterson has submitted evidence supporting his allegations that Baker has sexually harassed him.  These charges are serious, but they aren't at issue in any of the exhausted appeals before me today.[5]  For the reasons above, Baker's motion to dismiss (docket entry 132) and motion for summary judgment (docket entry 131)

---

[4](...continued)
doesn't impact you at all, right?"  And his credits were later restored on appeal within the prison system, when the offense was reclassified as an administrative violation.  For the reasons given above, the other privileges Masterson claims he lost do not implicate a protected liberty interest.

[5] Masterson submitted several declarations well after the deadline for filing oppositions to the defendants' motions (e.g., docket entries 207 and 208).  Those declarations, even if accepted, make only vague accusations about retaliation and Baker's alleged sexual harassment.  They do not provide evidence relevant to the specific retaliation and due process issues before me.  Another procedural issue: Though Masterson claims otherwise (docket entry 178), the magistrate judge did give defendants leave to depose him (docket entry 50).

are **GRANTED**. The other defendants' motion for summary judgment (docket entry 144) is also **GRANTED**.

There are two housekeeping matters. First, Masterson represents (docket entry 215) that the California Department of Corrections and Rehabilitation has not forwarded his filing fee in compliance with the court's June 5, 2006 order (docket entry 20). To the extent it has not already done so, the Department must now comply with that order. Second, Masterson requested an order directing the prison library staff to permit Masterson to make an additional copy of his pleadings since the defendants are represented by two different counsel (docket entry 212). That request is now moot.

December 17, 2010

_____
**ALEX KOZINSKI**

Chief Circuit Judge
Sitting by designation